# Penn Gas Coal Co., Appellant, *v.* Greensboro Gas Co.

*Equity—Specific performance—Contracts—Gas well—Mines and mining.*

1. A bill in equity praying for the literal performance of a contract is an appeal to the sound discretion of the court.

2. Where the defendant in an equity suit has substantially performed the contract involved, and in good faith has attempted to fulfil it in every particular, specific performance of an immaterial matter will not be decreed where such decree would inflict undue hardship on the defendant without advantage to the plaintiff.

3. Where an agreement between a coal company and a gas company provides that the latter in drilling a gas well through the former's coal seam should fill in the space between the outer and inner casings with liquid cement, and it appears that the enforcement of such provision would not benefit the coal company and would cause great loss to the gas company, a court of equity will not enjoin the completion of the well until the space between the casings is filled with the liquid cement.

Argued October 11, 1912.    Appeal, No. 156, Oct. T., 1912, by plaintiff, from decree of C. P. Westmoreland Co.,

No. 798, in Equity, dismissing bill in equity in case of Penn Gas Coal Company v. Greensboro Gas Co. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

DOTY, P. J., filed the following opinion:

### FINDINGS OF FACT.

1. The plaintiff corporation is engaged in the mining of coal and is the owner of coal lands in the County of Westmoreland, State of Pennsylvania.

2. The defendant corporation is engaged in drilling for natural gas in the County of Westmoreland and elsewhere.

3. The plaintiff company owns the Pittsburg seam of coal under the "Benjamin Guffey" tract, and the defendant company has secured from the owner of the surface the right to the oil and gas in and under said tract of land.

4. The two corporations, parties to this bill, on 20th April, 1908, entered into an agreement which, inter alia, provides as follows:

"Now this agreement witnesseth: That the said Greensboro Gas Company, the said party of the first part, for itself, its successors and assigns, does hereby agree to and with the Penn Gas Coal Company, its successors and assigns, as follows:

"First. That it will case the well which it is now engaged in drilling, to a depth of one hundred and fifty-four (154) feet, measured from the surface, with a casing of wrought iron, with screw joint, not less than ten inches in diameter; that it will place within the casing thus provided, an inner casing of not more than eight and one fourth (8¼) inches in diameter, of like material and kind, to extend to a depth of at least seven hundred and twenty (720) feet beneath the surface. That this inner casing shall be so placed with the outer casing that the space remaining between the two casings shall be

of equal width at all points as near as possible, and that the space beneath the outer and inner casings shall be filled with liquid cement, and for that purpose nothing but pure cement is to be used, to be mixed and used at such texture that it will freely flow and fill up the space thus remaining between the casings provided, to a depth of not less than seven hundred and twenty (720) feet, as measured from the overlying surface.

"The said party of the first part shall also fill the space between the ten-inch casing and the surrounding earth or strata of whatever diameter it may be found to be, to a depth of not less than one hundred fifty-four (154) feet, as measured from the surface, with grouting made of two parts cement and one part sharp sand, to be used at such texture that it will flow freely and fill up all crevices and open places between the line of ten-inch casing and the surrounding earth or strata." ......

"Fourth. The placing of the casings, and the cementing and grouting required by the terms of this agreement are to be done and completed to the satisfaction of the said Penn Gas Coal Company before the well now under course of drilling, or any wells hereafter to be drilled, are drilled to a depth of more than one thousand (1,000) feet as measured from the surface of the overlying strata, and that the said party of the second part, by its agents, servants or employees shall have the right to enter upon the premises on which the drilling operations are conducted for the purpose of examination and inspection of the methods and materials used by the said party of the first part in the performance by it of the covenants of this agreement."

5. The defendant began drilling a well on the "Guffey" tract about the middle of October, 1911, and in the drilling observed the requirements of the agreement except in two particulars: 1. The placing of the casings and the cementing and grouting were not completed to the satisfaction of the plaintiff company before the said well had been drilled more than one thousand feet. 2.

The entire space between the outer and inner casings was not filled with liquid cement to the depth of seven hundred and twenty feet as measured from the surface.

6. That the defendant did pour liquid cement, of the texture provided in the agreement, into the space between the outer and inner casings so long as said cement would flow therein and until said space was filled as far as it was possible to fill the same.

7. The bill filed by plaintiff avers failure of defendant to perform the contract, and prays: That defendant be restrained from conducting "any further drilling operations in connection with said well until it has fully complied with the terms of its said agreement with your orator by filling the space between the ten-inch casing and the surrounding earth or strata, of whatever diameter it may be found to be from the surface of said well, to a depth of not less than thirty (30) feet below the floor of the Pittsburgh seam of coal, with grouting made of two parts cement and one part sharp sand, to be used at such texture that it will flow freely and fill up all crevices and all the places between the ten-inch casing and the surrounding earth or strata; and also, until the defendant shall fill the space between the said 8¼-inch casing and the 10-inch casing with pure liquid cement, mixed and used at such texture as to flow freely and fill up the space remaining between the said 8¼-inch and 10-inch casings from the surface of said well to a depth of not less than one thousand feet measured from the surface."

### CONCLUSIONS OF LAW.

1. As the bill prays the literal enforcement of a contract it is, therefore, an appeal to the sound discretion of a chancellor.

2. As the defendant substantially performed the contract and in good faith attempted to fulfill it in every particular, specific performance of an immaterial matter will not be decreed where such decree without advantage

to the plaintiff would inflict undue hardship on the defendant.

3. The agreement between the parties provides, inter alia, that in the drilling of a gas well the space between the outer and inner casings shall be filled with liquid cement. The defendant will not be enjoined from drilling the well simply because this feature of the contract has not been performed as the evidence shows that it is not necessary to so fill such space in order to protect the plaintiff's mines, which was the avowed object in the making of the agreement.

4. That the bill in the case be dismissed.

### DISCUSSION.

Although the defendant in good faith tried to do as the contract requires, it failed to fill the space between the outer and inner casings with liquid cement. Of this the plaintiff complains and alleges that great injury is likely to follow "by reason of gas which probably will escape into the mine from the well now in course of drilling in the event gas should be encountered." The defendant avers that it has taken every reasonable precaution to safeguard the property of plaintiff and that there is no probability whatever, if gas be discovered, that it will escape into the plaintiff's coal mines.

At the threshold of the case it is highly important to determine whether the precautions already taken are sufficient to prevent the probable escape of gas. To permit the gas to escape into the mine would cause great damage to plaintiff and it might entirely destroy the property. The defendant has a right to bore through the stratum of coal in order to reach its gas, but every reasonable precaution must be taken to avoid injury to plaintiff's property. There can be no absolute certainty about the matter. Neither side affirms positively what will follow in the event that gas should be found. The plaintiff avers that the gas probably will escape into the

mine. The defendant alleges that there is no probability that the gas will find its way into the mine.

The question then is: Whether reasonable precautions have been provided to prevent the escape of gas? The gas, if found, will pass from the gas sand through a four-inch tube, encased in a 6⅝-inch casing, which is placed in an eight and one-fourth-inch casing and this latter casing enclosed in a ten-inch casing and the whole tube surrounded by cement from the surface to the bottom of the Pittsburgh seam of coal. In order to prevent the escape of gas there are provided the four lines of pipe and the cement filling outside of the ten-inch casing. The coal mine contains sulphur water. The acid of this water corrodes iron. The witnesses differ as to the time it would take to destroy an iron pipe or to weaken it so that it would not hold the gas. There is much testimony on the part of plaintiff that the precautions provided in the contract are necessary to prevent leakage of gas. Mine inspectors and mining engineers, who have had experience in and about coal mines testify that the grouting required is a reasonable precaution. On the other side witnesses, who have had a large experience in the drilling of oil and gas wells through coal seams are of opinion that the filling with liquid cement of the space between the inner and outer casings is not necessary. It appears that many thousand gas wells have been drilled through coal veins and the witnesses, who are men of practical experience, testify that they never knew an instance where the gas escaped through the pipes into the coal mines. In some way, which is not clearly explained, it seems that the pipes thus used are not seriously affected by the sulphur water.

There is one other consideration which seems to give force to defendant's contention that there is no human probability that gas will escape into the mine. The four-inch tube in which the gas is conveyed is encircled by a 6⅝-inch casing. Between this casing and tube is an open space and between the 6⅝ and 8¼ casing is an-

other open space free of obstructions to a distance of at least 1,100 feet from the surface. If gas should escape from the tube it would naturally pass through such spaces into the open air and it would have no tendency to pass through the remaining lines into the workings of the mine.

It seems to be fairly established, therefore, that there is no probability, if gas be struck, that any of it will find its way into plaintiff's mine and that every reasonable precaution has been adopted to avoid such danger. Further than this the court should not go unless the duty is to enforce strictly the terms of the agreement of 20th April, 1908. The defendant in one particular has failed to carry out the agreement. It made a reasonable effort in good faith to do what the contract requires. Twenty-two sacks of cement were poured into the space between the two casings. It is demonstrated by a mathematical calculation, the only way it could be shown, that the quantity of cement was not sufficient to fill entirely the space between the two casings. The liquid cement was poured in until the space seemed to be filled as no more could be put therein. The testimony does not show the cause of the trouble. No fault is alleged on the part of the defendant. The space is not filled with liquid cement. Nor is there a suggestion of any way to fill it at this time. The contract has not been performed and cannot now be performed in this particular.

If defendant be enjoined from completing the well until the space between the two casings is filled with liquid cement, the well will never be drilled. This would occasion great loss to the defendant and, as we have seen, it would result in no material benefit to the plaintiff. Under existing conditions and in the light of the testimony there is no probability of gas from the well escaping into the mine. That the space between the casings be filled with cement is not apparently a necessary precaution against accident. Under such conditions is

the plaintiff entitled to an enforcement of the letter of this contract?

The agreement is a little out of the ordinary; it is not based on a valuable consideration; each party recognizes the rights of property belonging to the other. The evident purpose of the agreement was to save the delay and expense of litigation, and such purpose has utterly failed. So far as possible, however, the agreement should be performed. The defendant alleges substantial performance and the impossibility without any fault on its part of following the agreement to the letter.

It has faithfully endeavored to perform the contract in every substantial particular and, therefore, has a right to invoke in its relief the equitable doctrine of substantial performance as declared in Gillespie Tool Co. v. Wilson, 123 Pa. 19; Morgan v. Gamble, 230 Pa. 165, and other cases along the same line. The defendant does not seek affirmative relief but in reply to plaintiff's demand that the contract be strictly enforced alleges performance of every material part.

It would seem, therefore, under the circumstances of this case that the defendant should not be prevented from completing the well. To stop the work we would cause great loss to the defendant, and it is altogether improbable that plaintiff will be injured by permitting the work to go on, as every reasonable and necessary precaution has been provided to prevent the escape of gas into plaintiff's mine.

This bill is for the specific enforcement of a contract and as such is an appeal to the conscience of a chancellor. And a contract which has been substantially performed, is not to be enforced in equity if its literal fulfillment has been prevented by uncontrollable circumstances when such enforcement would inflict undue hardship and especially where its non-enforcement does no injury to complainant.

Oil Creek R. R. Co. v. Atlantic & Great Western R. R. Co., 57 Pa. 65.

The agreement, however, was voluntarily entered into. The defendant company undertook to do what turned out to be impossible. The evidence undoubtedly shows that under the conditions, it is not necessary to fill entirely the space between the inner and outer casings with liquid cement. Both parties had a disposition to avoid litigation and yet both are responsible that litigation has followed and for this reason it is fair that the costs be divided.

And now, May 6th, 1912, this case came on to be considered on bill, answer and proofs and was argued by counsel, and upon due consideration it is ordered, adjudged and decreed that the injunction heretofore granted herein be dissolved; that the bill be dismissed; that neither side file bill for witness fees and that the docket costs be equally divided between the parties; that the prothonotary file of record the above findings of law and fact with this decree and that he give notice thereof to the parties of their counsel to the end that exceptions may be filed in accordance with the equity rules, and if no exceptions be filed in due time that decree absolute be entered as of course without further order.

*Error assigned* was the decree of the court.

*Charles E. Whitten,* with him *Paul H. Gaither,* for appellant.

*Robert W. Smith,* with him *A. Leo Weil,* of *Weil & Thorp,* and *James S. Moorhead,* for appellee.

PER CURIAM, January 6, 1913:

The decree is affirmed at the cost of the appellant on the findings and opinion of the learned judge of the Common Pleas.